IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK PARRIS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-0200-K-BK |
| | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSION, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, this cause has been referred to the undersigned United States magistrate judge for pretrial management. The Court now considers Defendant's *Motion for Summary Judgment*, Doc. 16. For the following reasons, Defendant's motion should be **GRANTED ONLY IN PART**.

**A.  Background**

In January 2015, Plaintiff Patrick Parris filed this lawsuit against Defendant Nationstar Mortgage, LLC, in Dallas County state court, in connection with the impending foreclosure sale of his home, located at 622 Kari Anne Lane, DeSoto, Texas, 75115 ("the Property"). Doc. 1-1. Plaintiff alleges violations of the Real Estate Settlement Procedures Act ("RESPA") and breach of contract, and he also seeks injunctive relief. Doc. 1-1 at 4-6. Defendant timely removed this case to this Court, asserting federal question jurisdiction. Doc. 1. The relevant facts follow.[1]

In August 2009, to secure a loan, Plaintiff executed a Promissory Note (the "Note") in the amount of $164,109 in favor of NexBank SSB ("NexBank") and its successors and assigns

---

[1] Unless otherwise noted, the background facts are drawn from the supporting appendices the parties submitted with their summary judgment briefs.

which was secured by a deed of trust to the Property (the "Security Instrument"). Doc. 16-3 at 1; Doc. 16-4 at 1. Bank of America, N.A. ("BOA") acted as loan servicer on Plaintiff's account. Doc. 16-3 at 3. In May 2013, after Plaintiff became delinquent under the terms of the Note and the Security Instrument, BOA and Plaintiff entered into a Special Forbearance Agreement (the "Forbearance Agreement"), under which Plaintiff was to make 12 monthly payments of $774.19, starting July 1, 2013 and ending June 1, 2014 (the "Forbearance Period"), after which the regular monthly payments would resume. Doc. 16-7 at 2, 7. A few days after entering into the Forbearance Agreement, Plaintiff was notified by letter that, beginning in June 2013, his loan would be serviced by Defendant. Doc. 16-6 at 1. In June 2013, the Security Instrument was assigned by NexBank to Defendant. Doc. 16-5.

In September 2013, Defendant sent Plaintiff a letter rejecting Plaintiff's monthly payment of $774.19 and demanding $11,740.05 to bring the account current. Doc. 18-3 at 1. In September 2014, Defendant sent Plaintiff a notice of default, based on Plaintiff's failure to make mortgage payments since August 2013, and demanding $26,693.17 to cure the default. Doc. 16-9 at 1.

On October 10, 2014, Plaintiff applied for a loan modification; however, Defendant contends that it notified Plaintiff by letter that the application was missing certain documentation. Doc. 16-10 at 1; Doc. 17 at 3. The letter allegedly provided that Plaintiff's failure to submit the requested documents by November 15, 2014 would result in the denial of his application. Doc. 16-10 at 1. On November 21, 2014, after Plaintiff failed to submit the requested documentation, Defendant denied his loan modification application. Doc. 16-11 at 1.

Defendant now moves for summary judgment in its favor on all of Plaintiff's claims. Doc. 16-2 at 1, 4-5. After Plaintiff's response, Doc. 18, and Defendant's reply, Doc. 19, the motion is now ripe for consideration.

**B.      Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id.* However, Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how that evidence supports his claim. *Id.*

**C.    Discussion**

   **1. RESPA Claim**

RESPA was enacted to protect defaulting borrowers from abusive mortgage practices, and prescribes certain procedures aimed at helping borrowers avoid foreclosure. *See* 12 C.F.R. § 1024.41 (listing loss mitigation procedures). Upon a borrower's submission of a loss mitigation application, section 1024.41 requires mortgage loan servicers to notify the borrower when it is received and whether it is complete. 12 C.F.R. § 1024.41(b). If the application is complete, the servicer is required to evaluate the borrower for, and give notice of, all loss mitigation options available to the borrower. 12 C.F.R. § 1024.41(b), (c). If the application is incomplete, the servicer must notify the borrower what documents are missing and specify a deadline for supplementation. 12 C.F.R. § 1024.41(b)(2)(i)(B). Moreover, if the servicer denies the loan modification option, it must permit the borrower to appeal the decision. 12 C.F.R. § 1024.41(c)(1)(ii). Importantly, a servicer need only comply with the requirements of section 1024.41 "for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i).

Plaintiff claims that Defendant violated RESPA by failing to give him the "proper" notices required under section 1024.41, specifically the notice outlined under subsection (c)(1)(ii) (a list of loss mitigation options, if any, borrow will offer; deadline to accept or reject the offer; and the right to appeal denial of any loan modification option). Doc. 1-1 at 3, 4-5. Defendant moves for summary judgment on this claim, arguing that it was only required to comply with the requirements of section 1024.41 for a single loss mitigation application. Doc. 16-2 at 3-4. Therefore, because Plaintiff had already engaged in the loss mitigation process when he entered into the Forbearance Agreement in May 2013, and again in October 2014,

4

Defendant was not required to comply with section 1024.41 for any loss mitigation negotiations between the parties in 2015. Doc. 16-2 at 3-4.

In response, Plaintiff avers that the 2013 Forbearance Agreement was entered into with the previous loan servicer, BOA, not Defendant. Doc. 18 at 6. Plaintiff maintains that he never received any notice regarding his 2014 application, and that he never applied for loss mitigation in 2015. Doc. 18 at 6-7. In reply, Defendant reiterates that it timely replied to Plaintiff's 2014 application, notifying him in three separate letters when it was received, that it was incomplete, and, ultimately, that it was denied for failure to submit missing documentation. Doc. 19 at 1-2.

As an initial matter, the 2013 Forbearance Agreement is not relevant to Plaintiff's RESPA claim. RESPA became effective on January 10, 2014, 12 C.F.R. § 1024.41, and as this Court has previously concluded, RESPA's effective date "reflects an intent to only apply it to conduct occurring after that date." *Searcy v. Citimortgage, Inc.*, No. 14-CV-02744-P, 2015 WL 11120981, at *4 (N.D. Tex. Sept. 16, 2015) (Solis, J.) (citing *Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *7 (6th Cir. May 6, 2015)). Here, Plaintiff entered into the Forbearance Agreement in May 2013, well before RESPA's effective date, Doc. 16-7 at 5; thus, any loss mitigation application submitted in connection with that agreement may not be considered when tallying the number of loss mitigation applications Plaintiff has submitted under RESPA. *See Searcy*, 2015 WL 11120981, at *4 (finding plaintiff's 2013 loss mitigation "did not trigger RESPA" as it was submitted before the effective date).

As evidence in support of its motion of summary judgment on Plaintiff's claim that he never received the proper notices under section 1024.41 in connection with his 2014 loss mitigation application, Defendant offers copies of two letters purportedly sent to Plaintiff concerning that application. Doc. 16-10; Doc. 16-11. The first, dated October 16, 2014, states

5

that Plaintiff's loss mitigation application was received but missing several documents. Doc. 16-10 at 1. The letter requested that Plaintiff submit the missing documentation by November 15, 2014, lest his application be denied. Doc. 16-10 at 1. The second, dated November 21, 2014, stated Plaintiff's application was denied because he failed to submit the requested documents, and informed him that he could submit a notice of error if he felt a mistake had been made. Doc. 16-11 at 1, 3. With this evidentiary showing of Defendant's compliance with section 1024.41(b)'s notice requirements, the burden shifts to Plaintiff to show that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587.

Plaintiff responds that Defendant "did not provide him with *any* notices required by 12 C.F.R. § 1024.41" in connection with his 2014 loss mitigation application. Doc. 18 at 6 (emphasis added). In support, Plaintiff cites the allegations contained in his verified petition. Doc. 18 at 6; *see Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014) ("Allegations in a verified complaint may serve as competent summary judgment evidence."); *Williams v. Wells Fargo Bank, N.A.*, 3:13-CV-0107-K, 2014 WL 1461974, at *2 (N.D. Tex. Apr. 14, 2014) (Kinkeade, J.) (confirming that the plaintiff/respondent "may rely on the facts presented in [his verified] pleadings on summary judgment").

Here, in the portion of his verified petition Plaintiff cites as controverting evidence, he alleges that he did not receive the "proper notices" required by section 1024.41. Doc. 1-1 at 3. Plaintiff's later discussion of his RESPA claim in the complaint, indicates precisely the notices he contends he did not receive – those required by section 1024.41(c)(1)(ii). *See* Doc. 1-1 at 5 ("Yet Defendant has failed to complete [sic] with 12 CFR Section 1024.41 and has specifically failed to give Plaintiff the notice required by 12 CFR Section 1024.41(c)(1)(ii)").

6

Plaintiff's verified averments are insufficient to establish that there is a genuine issue of material fact, however. As Defendant correctly states in its Reply, 12 CFR Section 1024.41(c)(1)(ii) prescribes the servicer's notice requirements upon its receipt of a *complete* loss mitigation application. *See* Doc. 19 at 1-2. Because the is no dispute that Plaintiff's 2014 loss mitigation application was incomplete, Defendant was not required to comply with those notice provisions.[2] Instead, the relevant notices are those outlined under subsection (b), which outline the notice requirements when the loss mitigation application is incomplete. *See* 12 C.F.R. § 1024.41(b).

Apparently, Plaintiff now is attempting to re-cast his RESPA claim as one premised on Defendant's alleged failure to comply with subsection (b)'s notice requirement. *See* Doc. 18 at 6 ("Defendant should not be able to specifically instruct [Plaintiff] to submit a loan modification application . . . and then not be held to the requirements of 12 C.F.R. Section 1024.41(b)."). The fact remains, however, that the allegations in Plaintiff's verified petition – the only competent summary judgment evidence Plaintiff proffers – concern Defendant's purported failure to comply with the notice requirement under subsection (c)(1)(ii), not subsection (b). Thus, the allegations in Plaintiff's verified petition do not rebut Defendant's evidence of compliance with subsection (b)'s notice requirement.

Accordingly, Plaintiff has failed to present competent summary judgment evidence sufficient to create a genuine issue of material fact and summary judgment should be granted in favor of Defendant.

---

[2] Defendant's argues in its motion for summary judgment that Plaintiff's 2014 application was incomplete. *See* Doc. 16-2 at 2 ("Defendant notified plaintiff . . . that the application was missing documents."). Plaintiff does not dispute that his 2014 application was incomplete in his response or otherwise contest Defendant's assertion. *See* Doc. 18.

**2. Breach of Contract Claim**

In the Original Petition, Plaintiff claims that the 2013 Forbearance Agreement "is a valid contract" under which Plaintiff tendered performance by making all required monthly payments. Doc. 1-1 at 5-6. Plaintiff asserts that Defendant breached the contract when it returned the payments tendered by Plaintiff and refused to accept subsequent ones. Doc. 1-1 at 6. Defendant contends it is entitled to summary judgment on this claim because Plaintiff "fail[ed] to make payments." Doc. 16-2 at 4-5. In the alternative, Defendant argues that Plaintiff's allegations of breach are unfounded, because when Plaintiff failed to make his regular monthly payments after the end of the forbearance period, Defendant was within its rights under the Note and Security Agreement to consider Plaintiff in default. Doc. 16-2 at 5. In response, Plaintiff contends that he tendered forbearance payments in July, August, and September 2013. Doc. 18 at 7. He therefore concludes that Defendant breached the contract first when it refused to accept his September 2013 payment and demanded the entire amount owed. Doc. 18 at 7. In reply, Defendant argues – for the first time – that Plaintiff breached the contract first by remitting his September payment late. Doc. 19 at 2-3. Thus, Defendant contends, it was within its right to return the payment and terminate the contract. Doc. 19 at 3.[3] Muffed

In order to prevail on his breach of contract claim, Plaintiff must prove each of the following elements: (1) there is a valid contract; (2) Plaintiff performed or tendered performance according to the terms of the contract; (3) Defendant breached the contract; and (4) Plaintiff sustained damages as a result of the breach. *Valero Mktg. Supply Co. v. Kalama Int'l, L.L.C.*, 51

---

[3] The Court does not consider Defendant's new argument that Plaintiff breached the Forbearance Agreement first by making untimely payments, to which Plaintiff obviously has had no opportunity to respond. *See United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived.").

S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). That being said, a party who is in default under a contract cannot maintain a suit for its breach. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016). However, once a breach occurs, the non-breaching party no longer has any obligation to perform pursuant to the contract. *See RE/MAX of Tex., Inc. v. Katar Corp.*, 989 S.W.2d 363, 364-65 (Tex. 1999); *see also Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 632-33 (5th Cir. 1999) (permitting a party in breach of contract at the time the suit was brought to recover damages when the other party "had breached [the contract] first") (citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685 (Tex. 1981)).

Neither party questions that the Forbearance Agreement is an enforceable contract that required Plaintiff to make monthly payments of $774.19 from July 2013 through June 2014. Doc. 16-7 at 1-7. The parties dispute, however, whether Plaintiff made the requisite payments. In support of its argument that Plaintiff "fail[ed] to make payments," Defendant cites to a printout of the detailed payment history for Plaintiff's loan. Doc. 16-2 at 4-5; *see* Doc. 16-8. Additionally, Defendant proffers the declaration of its Assistant Secretary, Lashunda Carter, who, also by citing to that payment history, avers that Plaintiff "became delinquent."[4] Doc. 17 at 3. Plaintiff rebuts this evidence by pointing to the allegation in his verified petition that he tendered forbearance payments in the amount of $774.19 to Defendant for July, August, and September 2013. Doc. 18 at 7; *see* Doc. 1-1 at 3; *Stauffer*, 741 F.3d at 581. Moreover, while Defendant also contends that Plaintiff's breach is evidenced by his failure to resume making

---

[4] While Defendant and Ms. Carter cite to the payment history printout in support of their assertions that Plaintiff failed to make payments, neither explains how the printout shows this. *See* Doc. 16-2 at 5; Doc. 17 at 3. Indeed, the document contains numerous confusing entries and abbreviations that Defendant makes no effort to explain or otherwise connect to its assertion that Plaintiff failed to make payments. *See* Doc. 16-8. On its face, it does not support the conclusion that Plaintiff failed to make the forbearance payments for the months he insists that he did.

regular monthly payments in 2014 after the end of the one-year forbearance period, that fact alone would not preclude Plaintiff's recovery if, as Plaintiff argues and avers, Defendant breached the contract first by returning Plaintiff's September 2013 payment. *Info. Commc'n Corp.*, 181 F.3d at 632-33 (citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685 (Tex. 1981)).

In light of this competing evidence, a genuine issue of material fact exists as to whether Plaintiff made his forbearance payments as obligated. *Villarreal*, 814 F.3d at 767; *RE/MAX of Tex., Inc.*, 989 S.W.2d at 364-65; *see Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) ("A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."). Accordingly, Defendant is not entitled to summary judgment on Plaintiff's breach of contract claim.[5]

### 3. Injunctive Relief

Lastly, Defendant moves for summary judgment on Plaintiff's claim for injunctive relief, arguing that it is derivative of his unavailing RESPA and breach of contract claims. Doc. 16-2 at 5. However, for the reasons stated herein, Plaintiff's breach of contract claim survives Defendant's summary judgment challenge. As this substantive claim remains, Defendant is not entitled to summary judgment on Plaintiff's claim for injunctive relief. *See Cook v. Wells Fargo Bank, N.A.*, No. 10-CV-0592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (Fitzwater,

---

[5] This result would not be different even if the Court considered Defendant's improperly raised argument that Plaintiff breached the Forbearance Agreement first by remitting his September 2013 payment late. Doc. 19 at 3. As discussed in footnote four, the payment history that Defendant cites in support of this assertion is far from conclusive. For example, there is no indication that the dates listed are those the payments were tendered and/or received, rather than simply the dates the payments were posted to the ledger. Again, Defendant has not presented supporting evidence that adequately explains the meaning of the entries and abbreviations contained therein or, at least, the relevant ones. *See* Doc. 16-8.

C.J.) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action.") (citation omitted).

**D. Conclusion**

In light of the foregoing, Defendant's *Motion for Summary Judgment*, Doc. 16, should be **GRANTED** as to Plaintiff's RESPA claim, and **DENIED** as to Plaintiff's claims for breach of contract and injunctive relief.

**SO RECOMMENDED** on August 18, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). Any objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE